IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JOE N AMMONS,

       Petitioner,

v.                             CASE NO. 4:08-cv-00208-MP -GRJ

WALTER MCNEIL,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Doc. 1, Petitioner's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Petition stems from Petitioner's Leon County convictions for armed burglary, grand theft of a firearm, and petit theft, for which he received a sentence of 12 years imprisonment. Petitioner contends that his trial counsel rendered constitutionally ineffective assistance for failing to investigate and call two potential witnesses and for failing to assert an objection to the trial court's jury instruction on burglary. Doc. 1 and attached memorandum. Respondent has filed a response and appendix with relevant portions of the state-court record. Doc. 11. Upon due consideration of the petition, the response, and the state-court record, the undersigned recommends that the Petition be denied.[1]

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

## **State-Court Proceedings**

As set forth in the state-court record, the facts adduced at Petitioner's jury trial

may be summarized as follows. *See* Respondent's Appendix ("App.") Exh. B (transcript

of jury trial). The victim, Annie Leland, testified that Petitioner, her brother, came to her

house on the evening of Saturday, December 21, 2002, to repair her water. Ms.

Leland told Petitioner that the water had been repaired by their brother, Jerome

Ammons, earlier that day. Ms. Leland told Petitioner that she was not going to be at

home, and she locked her house (with Petitioner outside) and left to attend a church

program with Rosa Chambers. At Ms. Chambers' suggestion, Ms. Leland returned

home to turn on a light. Ms. Leland entered the home through the front door, and then

discovered Petitioner standing outside her back door with some clothes in his hands.

The clothes belonged to Ms. Leland's recently deceased husband. Ms. Leland also

saw a box of shotgun shells sitting on a chair, and a screwdriver on the kitchen cabinet

that had not previously been there. She looked for her husband's shotgun, and

determined that it was missing. Ms. Leland accused Petitioner of breaking into her

house, and told him to return the shotgun or she would call the police. She made

Petitioner leave the clothes on the porch. Petitioner denied taking the shotgun. While

Ms. Leland was on the phone with the police, Petitioner left the house.

Leon County Deputy Sheriff William Punausuia testified that he responded to a

call to Ms. Leland's residence and observed pry marks on the back door, a rusty

screwdriver on the counter, a box of shotgun shells, and two pairs of jeans on the porch

and in the yard. Deputy Chris Poole testified that he responded to a BOLO call, and

about a mile from Ms. Leland's residence he observed a man fitting the BOLO

description walking along the road and carrying a shotgun. Deputy Poole detained the man, who identified himself as Joe Ammons. They were joined by Deputy Punausuia, who identified Petitioner in open court as the man with the shotgun.

The defense rested without putting on any evidence. Out of the presence of the jury, the trial court conducted a colloquy with Petitioner who testified under oath that he understood he had the right to testify and wished to waive that right.

Petitioner's counsel, Ethan Way, did not object to the trial court's jury instruction on the offense of burglary, which was as follows:

> To prove the crime of burglary, the State must prove the following three elements beyond a reasonable doubt. One, Joe Ammons entered or remained in a structure owned by or in the possession of Annie Leland. Two, Joe Ammons did not have the permission or consent of Annie Leland or anyone authorized to act for her to enter or remain in the structure at the time. Three, at the time of entering or remaining in the structure Joe Ammons had a fully-formed conscious intent to commit the offense of theft in that structure.

The jury found petitioner guilty on all three counts. Petitioner pleaded no contest to a severed fourth charge of possession of a firearm by a convicted felon. App. Exh. D. Prior to sentencing, Petitioner's counsel filed a motion for new trial on the grounds of newly discovered evidence and sufficiency of the evidence. Counsel had received information that Ms. Leland would recant some of her trial testimony, but at the motion/sentencing hearing he advised the Court that he did not intend to present any new evidence. App. Exh. E. Ms. Leland addressed the court during the sentencing phase of the hearing and did not contradict her trial testimony.

Petitioner appealed his conviction and sentence to the First District Court of

Appeal asserting three grounds for relief: (1) that the trial court gave an incorrect jury instruction on burglary; (2) that the trial court erred in sentencing Petitioner under the State's "10/20/Life" law; and (3) that the trial court erred in instructing the jury regarding the inference arising from the unexplained possession of recently stolen property. App. Exh. H. The First District affirmed *per curiam* without written opinion. App. Exh. K.

Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850, asserting that his trial counsel rendered ineffective assistance by: (1) failing to challenge Ms. Leland's capacity to testify since she had recently had a stroke; (2) failing to object to Ms. Leland's "inaccurate and fabricated" testimony; (3) failing to interview or call Jerome Ammons or Rosa Chambers as defense witnesses; and (4) misadvising Petitioner regarding his right to testify. App. Exh. L. The court denied Petitioner's motion for appointment of counsel, but held an evidentiary hearing on Petitioner's ineffective-assistance claims. App. Exh. M. Following the hearing, at which Petitioner and his former counsel both testified, the court rejected all of Petitioner's ineffective-assistance claims in a ruling delivered from the bench. *Id*. at 70-80.

As to Petitioner's claim (reasserted in this case) that his counsel rendered ineffective assistance for failing to investigate or call as witnesses Jerome Ammons or Rosa Chambers, the court noted that Petitioner had failed to list any potential witnesses on the standard client intake form that Mr. Way had Petitioner complete. The court found that "the record does not demonstrate that Mr. Way was ever advised of the potential testimony of Jerome Ammons or Rosa Chambers. . . . I find Mr. Way's explanation is much more credible than Mr. Ammons' testimony in this regard. I find, as

a matter of fact, he was not told about Jerome Ammons and Rosa Chambers. And in light of the undisputed testimony that Ms. Leland said that [Petitioner] did not have permission to go in her house, and he was seen walking down the street with a shotgun . . . it doesn't seem that any testimony that Jerome Ammons or Rosa Chambers gave would likely have resulted in any probable different outcome of the trial. Nevertheless, the Court finds, as a matter of fact, that Mr. Way was not informed of these witnesses and there's no evidence to indicate that failure to call them constitutes ineffective assistance of counsel, whether it be an act or omission below the prevailing standards of practice, or that it probabl[y] affected the outcome of the trial." App. Exh. M. at 73-76).

Petitioner, through appointed counsel, appealed the trial court's denial of his postconviction motion, asserting the following issues: (1) that the trial court erred in denying his request for appointment of counsel to represent him at the hearing; (2) that the trial court erred in rejecting his claim that his trial counsel was ineffective for failing to investigate two witnesses; and (3) that the trial court failed to act as an impartial arbiter at the evidentiary hearing because the court questioned Petitioner in a prosecutorial manner. App. Exh. N. The First District affirmed *per curiam* without a written opinion. App. Exh. Q. Petitioner filed a motion for reduction of sentence, which the trial court denied as untimely. App. Exh. R, S.

Petitioner then filed the instant federal habeas petition, which Respondent concedes is timely. Respondent asserts that Petitioner's first claim in the petition – pertaining to counsel's alleged failure to investigate and call witnesses – is facially insufficient because Petitioner does not identify the alleged witnesses or explain how

such witnesses' testimony would have helped his defense. Respondent contends that in any event Petitioner is not entitled to relief on the merits of this claim. As to Petitioner's second claim, pertaining to counsel's failure to object to the jury charge on burglary, Respondent asserts that the claim is unexhausted and procedurally defaulted. Doc. 11.[2]

## <u>Section 2254 Exhaustion Requirement</u>

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally

---

[2] As Respondent points out, Petitioner has somewhat confusingly denominated his first claim as "Point One and Two" and his second claim as "Point Three and Four." The Court agrees with Respondent that, even liberally construed, Petitioner has raised only two claims for federal habeas relief.

defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11ᵗʰ Cir. 2010). To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## <u>Section 2254 Standard of Review</u>

For properly exhausted claims, there are limitations on this court's review of state court findings of fact. Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly

established Federal law, as determined by the Supreme Court of the United States,"
refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower
federal courts may be considered to the extent that they demonstrate how those courts
applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir.
2003) (citations omitted) ("The decisions of other federal circuit courts (and our
decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the
decisions demonstrate that the Supreme Court's pre-existing, clearly established law
compelled the circuit courts (and by implication would compel a state court) to decide in
a definite way the case before them."). *See also, Carey v. Musladin,* 549 U.S. 70, 74-77
(2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting
circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have
independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,*
535 U.S. 685, 694 (2002) (citing *Williams* ).  Under the "contrary to" clause, a federal
habeas court may grant the writ if the state court arrives at a conclusion opposite to that
reached by [the Supreme] Court on a question of law or if the state court decides a
case differently than this Court has on a set of materially indistinguishable facts. Under
the "unreasonable application" clause, a federal habeas court may grant the writ if the
state court identifies the correct governing legal principle from this Court's decisions but
unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529
U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not
require citation of our cases-indeed, it does not even require *awareness* of our cases,
so long as neither the reasoning nor the result of the state-court decision contradicts

them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

**Ineffective Assistance of Counsel**

Because Petitioner's claims raise the issue of counsel's effectiveness, a review of  *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.   To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.  The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice.  *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance.  *Strickland*, 466 U.S. at 689-90.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  This standard is objective,

and "it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight." *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007). "The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel." *Id*. When the court "can conceive of a reasonable motivation for counsel's actions," it can deny the claim of ineffectiveness without evidentiary hearing. *Id*. "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption . . . that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Where a defendant challenges a not-guilty plea based on ineffective assistance of counsel, he must "show that there is a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial." *Coulter v. Herring*, 60 F.3rd 1499, 1504 (11th Cir. 1995) (internal quotations omitted).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).

## **Petitioner's Claims**

### **(1) Ineffective Assistance Regarding Uncalled Witnesses**

Although Petitioner's claim as formulated in the instant petition is somewhat lacking in detail, the Court does not find, as Respondent suggests, that it is facially insufficient. Petitioner appended his Rule 3.850 motion to the petition,

and that pleading clearly sets out his claims concerning counsel's alleged failure to interview or call as witnesses Jerome Ammons and Rosa Chambers. *See* Doc. 1. At the evidentiary hearing, Petitioner contended that Rosa Ammons would have testified that Ms. Leland told her when they left for church that she left Petitioner at her house to repair her water. He contended that Jerome Ammons would have testified that he did not repair Ms. Leland's water. App. Exh. M.

"Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980). In this case, the state court considered the testimony of Jerome Ammons at the evidentiary hearing. Petitioner offered nothing beyond his own conclusional assertions as to what Ms. Chambers would have testified to, and she was not present at the evidentiary hearing. Although Jerome Ammons testified at the hearing that he did *not* repair Ms. Leland's water on the day of the burglary, he had no other information about the crime. App. Exh. M. The state court found that in light of Ms. Leland's uncontroverted trial testimony that Petitioner did not have permission to be in her home and that he was apprehended while walking down the street with her husband's shotgun, any testimony by Jerome Ammons or Rosa Chambers would not have resulted in a different outcome at trial.

Moreover, the state court made a finding that Petitioner never identified the witnesses to Mr. Way before trial. The court expressly credited Mr. Way's

testimony on this point, and reviewed the client intake sheet on which Petitioner noted "N/A" as to possible witnesses. The state court's findings as to witness credibility are presumptively correct. *See Brown v. Head*, 272 F.3d 1308, 1314 (11th Cir. 2001). Petitioner has identified no evidence sufficient to overcome the presumption of correctness afforded to the trial court's determination that Mr. Way's testimony on this point was more credible than Petitioner's.

The state court applied *Strickland* to determine that counsel's performance was neither deficient nor was Petitioner prejudiced by counsel's failure to call the witnesses identified by Petitioner in his postconviction motion. In light of the trial record and the testimony adduced at the evidentiary hearing, the Court cannot say that the state court's rejection of Petitioner's ineffective-assistance claim was contrary to, or an unreasonable application of, *Strickland*.

### (2) Ineffective Assistance Regarding Jury Instruction

Petitioner unsuccessfully challenged the trial court's jury instruction on burglary on direct review, contending that it was error for the court to include the "remaining in" language in the instruction because in order to be found guilty of burglary under state law the jury had to find that Petitioner "entered" the structure with the intent to commit a crime. *See* App. Exh. G. Petitioner did not present the claim as one of ineffective assistance of counsel either on direct appeal or on postconviction review. A careful review of the postconviction record, including the transcript of the evidentiary hearing, shows that Petitioner did not raise this claim at any time in connection with his Rule 3.850 motion. As this ineffective-assistance claim was not fairly presented to the state

court, it was not properly exhausted. *See O'Sullivan*, 526 U.S. at 845. Moreover,

Petitioner would be barred under state procedural default principles from asserting this

claim in a future state post-conviction motion. Under Florida law, courts may summarily

dismiss claims raised in a successive motion for post-conviction relief that were either

previously adjudicated on the merits or that could have been raised in a prior Rule

3.850 motion. *Christopher v. State*, 489 So.2d 22, 24-25 (Fla. 1986); Fla. R. Crim. P.

3.850(f). Petitioner has made no showing of cause for the procedural default or that a

fundamental miscarriage of justice would result from the failure to consider the merits of

this ineffective-assistance claim. *See Bailey*, 172 F.3d at 1303.[3]

Accordingly, for the foregoing reasons it is respectfully **RECOMMENDED** that the

---

[3] Even if the Court construed the claim as a direct challenge to the jury instruction, the Court would not find that Petitioner is entitled to federal habeas relief. It is not the province of a federal habeas court to re-examine state court determinations on state law questions. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Jury instructions are evaluated in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982). The inquiry on habeas review is whether there is a "reasonable likelihood" that the jury applied the challenged instruction in a way that violates the Constitution. *Estelle*, 502 U.S. at 72 & n.4. As the State pointed out on direct appeal, the unobjected-to "remaining in" language was mere surplusage because Ms. Leland's uncontroverted testimony was that Petitioner did not have permission to enter her home. *See* App. Exh. I. In the context of the instructions and the trial as a whole, the Court is not persuaded that the inclusion of the challenged language creates an issue for federal habeas relief, and the state court's rejection of this claim on direct appeal was not contrary to, or an unreasonable application of, federal law.

petition for a writ of habeas corpus, Doc. 1, be **DENIED,** and that a certificate of

appealability be **DENIED**.

      **IN CHAMBERS** this 5th day of January 2011.


*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**